Henrietta GOETZ, as Administratrix of the Estate of August Goetz, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.
Oct. 25, 1954.

Hanrahan & Brennan, New York City, Michael E. Hanrahan, New York City, of counsel, for plaintiff.

J. Edward Lumbard, U. S. Atty., New York City, Morton S. Robson, Asst. U. S. Atty., New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

Plaintiff brings this action under the Federal Tort Claims Act, 28 U.S.C. 1346(b), to recover for pecuniary loss and hospital and funeral expenses sustained by her and for the pain and suffering of her husband who was struck by an Army vehicle on November 23, 1951, resulting in his death a day later. The accident occurred at about 4:30 p. m. on Greenwich Street, at or near its intersection with Liberty Street, in New York City. Greenwich Street is a one way street going north. Plaintiff's decedent was apparently attempting to cross from east to west on Greenwich Street, and was struck when he was almost at the center of the street.

The main issues are whether the defendant's driver was negligent and whether plaintiff's intestate was contributorily negligent. It is conceded that the defendant's driver was acting within the scope of his employment at the time.

At the trial, plaintiff called as her witness, police officer Pugarelli, who arrived on the scene immediately after the accident. He testified that he had measured, by pacing, the skid marks made by the vehicle, and that they covered a distance of approximately thirty feet. While the accuracy of this measurement was attacked on cross-examination, I am not convinced that its exactness was materially affected.

The plaintiff also called as an expert witness a professional engineer, who testified that on the basis of the length of the skid marks, the vehicle's speed was 27.7 miles per hour before it began to skid. He stated that this was a "conservative estimate" of the speed since he had discounted other factors, normally present, which would increase this figure. On cross-examination, no inroads were made on his scientific hypothesis.

The only evidence which had any tendency to contradict plaintiff's approximation of the speed of the car was a portion of a deposition read at the trial of the witness Stanley Bacon, an Army officer and passenger in the vehicle at the time of the accident. He testified that he believed the car was going no more than fifteen or twenty miles an hour immediately preceding the accident. This testimony, as well as other parts to be referred to later which also relate to observables immediately preceding the accident, is less than convincing because the witness admitted that he was reading a newspaper most of the time preceding the accident. He did not observe the

speedometer and he stated that the newspaper reading was interrupted only by the strong application of the brakes which, he said, threw him so far forward that he almost hit his head against the front seat. In fact, one of the few things which he claimed to have directly observed was the closely parked cars on the east side of Greenwich Street north of the North crosswalk. This also appears to be inaccurate. The police officer testified that there were no parked cars on that side at the time of the accident, and, moreover, that there is a fire hydrant directly adjacent to the point where Bacon claimed he saw the cars parked without any space between them. These factors strain credulity.

When the lucid and substantially unimpeached testimony of the disinterested police officer and the expert engineer is contrasted with the portions of Bacon's deposition which are contradictory a conclusion that the vehicle was operated at a rate of speed excessive under the circumstances seems inescapable. Furthermore, it is noted that Bacon's attention was distracted immediately prior to the accident by his observations of a Horn and Hardart store, cars slowing down traffic and the reading of a newspaper. Both Bacon by deposition, and the police officer in open Court, testified that the area is usually congested with vehicles and pedestrians at 4:30 in the afternoon. Bacon testified:

"I will say this from my * * * constant observation, that around the time offices are closed in lower Manhattan you would think that the cow pasture fence was down all along the line and not just at a gate, and people are trooping out and crossing the street anywhere * * with almost utter abandon, and that street [Greenwich] is narrow enough so that anybody driving up it is going to be as careful as they can because you don't know when somebody is going to cut across it. It is that kind of street at 4:30 in the afternoon."

From other portions of Bacon's deposition it is reasonable to infer that the driver had considerable knowledge of these general circumstances at Greenwich Street at this time of day. Accordingly, I find that the plaintiff has established the negligence of the defendant.

On the issue of contributory negligence I find that the defendant has not met the burden of proof required of it by Section 131 of the New York Decedent Estate Law, McK.Consol.Laws, c. 13. The defendant seems to rely heavily on the argument that the decedent was negligent in that: (1) he did not cross at the crosswalk, but a considerable distance north of it and (2) he crossed against the light. Instead of meeting the burden cast upon it of proving contributory negligence, defendant rested at the end of the plaintiff's case without calling a single witness. Even if this Court construes most favorably to the defendant all the evidence on this phase, it appears that at most the decedent deviated only slightly from the unmarked crosswalk. Such slight deviations do not constitute contributory negligence *per se*, Baker v. Close, 1912, 204 N.Y. 92, 93, 97 N.E. 501, 38 L.R.A.,N.S., 487. Moreover, I am not convinced this deviation, if it existed, constituted contributory negligence under the circumstances present here. As to the second alleged act of contributory negligence the defendant offers the following: Bacon testified in his deposition that the car stopped for a red light on Greenwich Street at the block just south of the Liberty Street intersection (Cedar Street); that the car proceeded immediately upon the green light, which he observed at Cedar Street; that the lights turn green at exactly the same time at Cedar Street and at Liberty Street; that the block separating these two lights is a short one. From this we are asked to *infer* that the light was green in favor of the car and red against the decedent at Liberty Street. It is to be noted that he testified that he never actually saw the light at the Liberty Street intersection. Moreover, Bacon also testified that the car almost stopped at the Liberty

Street intersection because a car in front was turning on Liberty or attempting to park there; and that the car was proceeding slow enough for him to observe that someone was engaged in repairing the neon sign on a corner store (Horn & Hardart). Under the usually congested conditions in the area at that time, it is reasonable to infer that it would take considerable time for any vehicle to turn off or park on Greenwich Street. With these factors in mind and realizing that Bacon lacked direct knowledge of the circumstances immediately surrounding the accident, it is reasonable to conclude that, due to the delay, the light might have turned red against the defendant's driver sometime before or at the time he reached the intersection. Considering all the evidence, I am convinced that the defendant has failed to establish with any reasonable degree of certainty that the light favored the vehicle and was red for the pedestrian, and certainly defendant has failed to sustain its burden of proving the deceased's contributory negligence by a fair preponderance of the evidence.

We now approach the matter of damages. The evidence adduced on this score at trial was as follows:

Mrs. Goetz testified that her husband earned about sixty dollars weekly, and that she received between forty-five and fifty-five dollars weekly from her husband for the maintenance of the home. However, the weight of her testimony was impaired by the disclosure that for the years 1949, 1950 and 1951, Mr. and Mrs. Goetz had filed a joint return showing a salary earned by Mr. Goetz of approximately sixty-two dollars per week. Mrs. Goetz and Mr. Nathan, the deceased's employer, attempted to explain away Mrs. Goetz's assertion that she received weekly contributions from her husband of forty-five to fifty-five dollars in light of a total weekly income of sixty-two dollars by urging that substantial annual bonuses were given to the decedent over and above his salary. In light of the tax returns filed, the amount of tax withheld by the employer, the lack of any corroborative business record that any bonus was received by the deceased, I cannot attach weight to Mrs. Goetz's testimony with respect to the amount of the weekly contribution made to her. It must be noted that the deceased paid the rent, clothed himself, paid for his lunches, fares and taxes out of the balance remaining after the contributions to his wife. It is hardly likely that this could be done from the balance of his salary left after payment to Mrs. Goetz of her claimed weekly stipend.

The mortality tables reflect that Mr. Goetz had an average future lifetime of almost fourteen years. Mrs. Goetz's average future lifetime is in the same sphere. However, I must take into account the fact that Mr. Goetz was suffering from hypertension and diabetes, even though these conditions might not have been of a serious nature as Dr. Miller testified. I am compelled to determine how long under these circumstances Mrs. Goetz would have derived some pecuniary benefit from the deceased and in what amount. Loetsch v. New York City Omnibus Corp., 1943, 291 N.Y. 308, 310, 52 N.E.2d 448.

In addition to the amount representing the pecuniary loss to decedent's wife, the plaintiff is entitled to recover the sum of $914.12, which was expended by her in payment of the hospital and funeral bills.

As to the damages claimed for conscious pain and suffering, I can infer from Mrs. Goetz's testimony that her husband was partially conscious for several hours between the accident and his death. The police officer testified that decedent was conscious during the period between the accident and the arrival of the ambulance. Mrs. Goetz's testimony was substantially corroborated by the entries in the emergency hospital record made by physicians who treated the decedent. I find that a reasonable sum for the pain and suffering experienced by the decedent is $1,000.

I accordingly make the following award to the plaintiff: On the first cause

of action—for conscious pain and suffering endured by the deceased—$1,000. On the second cause of action—the sum of $914.12 for hospital and funeral bills. In addition—for pecuniary loss—taking into consideration the average future lifetime not only of the administratrix but of the deceased, and making proper allowance for the deceased's physical condition as well as evaluating the reasonable pecuniary loss to the plaintiff in the light of his past contributions as reconstructed and fairly estimated by this Court, and further considering the present value of such award for the plaintiff's life at the rate of 4%, I award the plaintiff the sum of $15,500. Accordingly, I make a total award to the plaintiff in the sum of $17,414.12.

The foregoing opinion will constitute the Court's Findings of Fact and Conclusions of Law.